DECISION
Plaintiffs have appealed Defendant's July 10, 2008, notice of disqualification of their property from farm use special assessment. Trial was held by telephone May 21, 2009. Milana Bernasek (Bernasek) appeared for Plaintiffs. Appearing for Defendant were Paul Chalmers, Assessor; Angie Galino, Chief Appraiser, Umatilla County Assessor's office; John Salter, Farm/Forest Appraiser, Umatilla County Assessor's office; and Frank Lassen, an employee of the Oregon Department of Revenue. For ease of reference, the parties will be referred to as taxpayers and as assessor.
 I. STATEMENT OF FACTS
Taxpayers own 106.23 acres of land. All but one acre of that property was specially assessed as farmland in an exclusive farm use (EFU) zone.[1] Taxpayers purchased the property in 2001, and built a home on the land the following year.
Taxpayers have not farmed the property since their purchase. Bernasek testified that 80.43 acres are not accessible and therefore cannot be farmed. That testimony is consistent with Bernasek's written statement to the court in a letter dated May 11, 2009, that "80.43 acres * * * are not accessible by any farm equipment." Bernasek goes on to state in that letter that "[w]e *Page 2 
have currently 24.8 [acres] that have the potential to be farmed and a history of Wheat farming." Bernasek testified that the previous owners grazed cattle on the property at some point prior to their sale of the land to taxpayers. The assessor does not dispute that the prior owners may have run cattle on the property.
A portion of the property has been under a federal farm program known as Direct and Counter-cyclical Payment (DCP) Program. The parties disagree as to the amount of land in the DCP Program.
Under the DCP program, eligible participants receive payments (referred to by Bernasek as a stipend) from the federal government, provided they meet the then-current program requirements.[2] The parties agree that farming the land is not a prerequisite to participation in the federal DCP Program, or for receipt of payments under that program. Bernasek testified that taxpayers receive(d) a stipend of $200 under the DCP Program. Bernasek further testified that taxpayers filed a federal farm Schedule F, although they did not provide the assessor with a copy of that form, or submit it into evidence for their trial in this court.
Staff within the assessor's office visited taxpayers' property several times between 2003 and 2008 and found no farming taking place on the property. On or about May 15, 2008, the assessor's office sent taxpayers a letter indicating that "it appears that the land is not currently employed for the primary purpose of obtaining a profit in money by farming as per ORS 308A.056." Included with that letter was an income questionnaire and an information circular titled "Assessment of Farmland in an Exclusive Farm Use Zone." Taxpayers were advised that the assessor would proceed with disqualification of the property if his office did not receive the *Page 3 
completed income questionnaire by June 15, 2008. Bernasek responded by letter dated May 28, 2008, stating in part that "[t]he land we own was not farmed for several years prior to us buying it; however, the previous owners did have cattle on the land." (Ptfs' Ltr, May 28, 2008.) Bernasek goes on in that letter to discuss future plans for farm-related use of the property; likely raising cattle. (Id.) Taxpayers did not include an income questionnaire with their letter, presumably, because they did not earn any farm-related income from their property.
Based on the lack of any observable farming activity, and taxpayers' failure to submit any proof of farming in response to the assessor's May 15, 2008, letter, the assessor sent taxpayers a notice, dated July 10, 2008, informing them that 105.23 acres "have been disqualified [because] * * * the land has changed to a non-qualifying use such as residential, commercial or industrial." That notice goes on to state that the land is disqualified under ORS 308A.113(1)(a). The assessor made the disqualification effective for the 2008-09 tax year, and imposed a 10-year rollback tax based on the difference between the taxes actually imposed on the land and the taxes that would have been imposed had the land not been in farm use special assessment.
Taxpayers timely appealed to this court, requesting that the court "stop" the disqualification, and give them two years to fence their property and begin raising cattle and boarding horses.
The two primary issues for the court to resolve are: 1) whether the acreage in the DCP Program qualifies for farm use special assessment for land in an EFU zone and, if so, how much of taxpayers' land is in that program; and 2) whether the remaining acres (excluding a one-acre homesite) that taxpayers admit are not being farmed qualify for farm use special assessment. *Page 4 
 II. ANALYSIS
A. Statutory Overview of Farm Use Special Assessment in an EFU Zone
ORS 308A.062[3] provides for special assessment for "land that is within an exclusive farm use zone and that is used exclusively for farm use." The definition of "farm use" is found in ORS 308A.056. Under that statute, "`farm use' means the current employment of land for the primary purpose of obtaining a profit in money" by one of a number of statutorily enumerated farming and farm-related activities. ORS 308A.056(1). Included in the list of qualifying farm uses is "[r]aising, harvesting and selling crops; [f]eeding, breeding, managing or selling livestock * * * [and][s]tabling or training equines." ORS 308A.056(1)(a), (b), (d). Involvement in a government farming program can also qualify land for farm use special assessment in Oregon. ORS 308A.056(3)(a).
Under ORS 308A.113(1)(a), the assessor is required to disqualify land in an EFU zone "upon the discovery that the land is no longer being used as farmland." That is the statutory provision the assessor used in this case to disqualify taxpayers' 105.23 acres.
The answer to the question of whether the portion of taxpayers' land in the DCP Program qualifies for special assessment hinges on the meaning and interpretation of ORS 308A.056(3)(a). The question of whether the balance of taxpayers' land qualifies for special assessment is based on the other provisions in ORS 308A.056(1).
B. Farm Use Special Assessment for Land Under the Federal DCP Program
As indicated above, farm use special assessment generally requires "the current employment of land for the primary purpose of obtaining a profit in money." ORS 308A.056(1). *Page 5 
However, ORS 308A.056(3)(a) provides:
 "For purposes of this section, land is currently employed for farm use if the land is:
 (a) "Farmland, the operation or use of which is subject to any farm related government program[.]"
The parties agree that a portion of taxpayers' land is enrolled in the DCP Program, a federal Farm Service Agency (FSA) administered program that provides "income support to producers of eligible commodities and are based on historically-based acreage and yields and do not depend on the current production choices of the farmer." (Ptfs' App B at 2.[4]) The parties also agree that taxpayers were not required to farm their land in order to qualify for the program. The e-mail from the Umatilla County FSA office confirms that taxpayers were not required to plant a grain crop in order to participate in the program. (Ptfs' App A.)
The assessor insists that taxpayers do not qualify for farm use special assessment under state law because they did not submit a federal Schedule F, they did not farm the property, and they had no profit motive related to farming. However, the applicable statute, ORS 308A.056(3)(a), does not appear to require that any farming occur on the property.
Again, although 308A.056(1) provides generally that "farm use" requires "the current employment of land for the primary purpose of obtaining a profit in money," subsection (3)(a) of that statute provides that "land is currently employed for farm use if the land is * * *[f]armland, the operation or use of which is subject to any farm-related government program." It is undisputed that taxpayers' property is subject to a farm-related government program. Moreover, employees with the Oregon Department of Revenue (department) who were brought into the case at the assessor's request, were unable to state that participation in the DCP Program, *Page 6 
without any accompanying farming activity, precluded land from qualifying for farm use special assessment under Oregon statutes. Lassen testified that he was unclear as to whether participation in the DCP Program qualifies for farm use. An e-mail from Gary Wright (Wright), another department employee knowledgeable in such matters, sent to Lloyd Shank (Shank), a Umatilla County farm appraiser, expresses similar uncertainty. In that e-mail, transmitted July 21, 2008, approximately two weeks after the disqualification, Wright states:
 "For your information if a program qualifies as a farm related government program under ORS 308A.056(3)(a) it is considered currently employed regardless of whether or not the land is being used with the intent of making a profit in money. The purpose of ORS 308A.056(3) is to identify those situations where the land may not necessarily meet the qualifications of ORS 308A.056(1), but, may still be considered to be in farm use special assessment."
(Def's Supp Answer at 20.)
Based on the evidence before it, and the more liberal farming provisions of ORS 308A.056(3)(a), the court concludes that the portion of taxpayers' property covered by the DCP Program qualifies for farm use special assessment under ORS 308A.062.
The next question is how much of taxpayers' land is in the DCP Program. The evidence is somewhat conflicting. One document taxpayers submitted (App A) is an e-mail to Bernasek dated July 16, 2008, from Tina Campbell, an employee with the Umatilla County Farm Service Agency (FSA). That e-mail states, in pertinent part:
 "I've done some research and found that this farm/tract has a Wheat base of 24.8 acres. Back in the 90's this farm had a crop rotation, planting in the even years and laying fallow in the odd years. Then in 1998 the new farm bill combined the even/odd years and then divided by 2 in order to earn payment every year instead of just the year the land was in crop (even). The system came up with 24.8 wheat acres in which was created as contract acres. To this day, this farm/tract is still carrying a 24.8 Wheat base acres
until the new farm bill is put into place. *Page 7 
 "* * * Since this last farm bill was a "freedom to farm' bill, the producer's (sic) didn't have to plant a grain crop in order to participate in the program"
(Ptfs' App A.) (emphasis added).
That information appears consistent with Bernasek's written statement to the court in a letter dated May 11, 2009, that "80.43 acres * * * are not accessible by any farm equipment [and that] * * *[w]e have currently 24.8 [acres] that have the potential to be farmed and a history of Wheat farming."
Other information submitted by taxpayers appears to indicate taxpayers have 46.8 acres in the DCP Program, as Bernasek testified at trial. Taxpayers submitted a document from the U.S. Department of Agriculture titled "Abbreviated 156 Farm Record," prepared July 18, 2008, which indicates that although there is a "Base Acreage" for "Wheat" of 24.8 acres, the "Effective DCP Cropland" is 46.8 acres. (Ptfs' App E at 19.) Taxpayers also submitted copies of FSA reports pertaining to the DCP Program that set forth the acreage taxpayers reported to the federal government for purposes of the determination of eligibility for assistance under the program. (Ptfs' App E at 7-11, 13-17.) According to those documents, taxpayers reported various amounts of acreage involved in the program, beginning at 50.9 acres for 2002 and 2003, 48 acres for 2004 through 2007, and either 48 acres or 46.8 acres for 2008. However, Bernasek's testimony appears to conflict with the information on those forms for some of the years involved in terms of the intended use of the property. For example, although the forms indicate that the "Crop" would be "Falow" in 2002, 2003, and 2005, the forms indicate the "Int Use," which the court interprets as "intended use," in 2004, 2006, 2007, and 2008 was "Graze." (Id.) The court admittedly is not an expert at interpreting the documents, and Bernasek presented no useful testimony on the matter at trial, but it appears to the court that the FSA simply accepted the *Page 8 
amounts of land taxpayers reported, as well as the accompanying use, if any, of the land under the program.
Taxpayers have the burden of proof. ORS 305.427. Taxpayers were aware that there was disagreement about the amount of land involved in the DCP Program. Given the nature of the evidence, and the fact that taxpayer must shoulder the burden of proof, the court concludes that 24.8 acres were under the DCP Program, and that those 24.8 acres qualified for farm use special assessment.
C. Farm Use Special Assessment for Land Not in the DCP Program
The next question is whether the assessor erred in disqualifying the balance of taxpayers' land from farm use special assessment. The amount in question is 80.43 acres. That is a much simpler question for the court to answer because qualification for farm use special assessment requires the "current employment of land for the primary purpose of obtaining a profit in money" by one of a number of qualifying farming or farm related practices. ORS 308A.056(1). Taxpayers acknowledged that the 80.43 acres was not farmed and, in fact, was not capable of being farmed. Taxpayers have not farmed their property since their purchase. Accordingly, the 80.43 acres of land did not qualify for special assessment and the assessor did not err in disqualifying that land from farm use special assessment.
D. Final Matter — Effective year of the Disqualification
During the trial, the court raised the issue about the effective date of the disqualification, because the last sentence of subsection (2) of ORS 308A.062 provides that "[i]f the land becomes disqualified on or after July 1, the land shall continue to qualify for special assessment as provided in this section for the current tax year." The assessor did not disqualify taxpayers' land from special assessment until July 10, 2008, and, under ORS 308A.062(2), the effective *Page 9 
date of the disqualification would have been the 2009-10 tax year. However that provision is overridden by subsection (3)(a) of ORS308A.113, which provides, in relevant part:
 "Notwithstanding ORS 308.210, 308A.062, * * * if disqualification occurs as a result of the discovery that the land is no longer in farm use, then, regardless of when during the assessment year discovery is actually made, disqualification by the county assessor shall occur as of the January 1 assessment date of the assessment year in which discovery is made."
Accordingly, the disqualification was effective for the 2008-09 tax year. It is only the amount of land subject to disqualification that the assessor erred in determining.
 III. CONCLUSION
After careful consideration of the evidence and applicable law, the court concludes that 24.8 acres of taxpayers' land qualifies for farm use special assessment under ORS 308A.062 and ORS 308A.056(3)(a), because it was subject to the DCP Program, a "farm-related government program," and that the remaining 80.43 acres was properly disqualified from farm use special assessment because the land was not currently employed in any of the statutorily enumerated qualifying farm activities. Now, therefore,
IT IS THE DECISION OF THIS COURT that taxpayers' appeal is granted in part and denied in part, as set forth above, and that the assessor shall adjust the assessment and tax rolls in accordance with the court's decision herein.
Dated this ____ day of October 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed. *Page 10 
 This document was signed by Magistrate Dan Robinson on October 30,2009. The Court filed and entered this document on October 30, 2009.
[1] The one acre was valued as a homesite.
[2] According to a document submitted by Plaintiffs describing the program, an eligible participant must sign an agreement with the Farm Service Agency (FSA), "[r]eport how they use all their farms' cropland acreage; [c]omply with conservation and wetland protection requirements" and "planting flexibility requirements; [u]se the cropland for agricultural or related activities; and "[c]ontrol noxious weeds * * *." (Ptfs' App C, at 1, 2.)
[3] All references to the Oregon Revised Statutes (ORS) are to 2007.
[4] That exhibit is an excerpt of a May 2005 "Fact Sheet" published by the United States Department of Agriculture (USDA) FSA. *Page 1